UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| STEVEN LINELL SMITH,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE; LOUIS DEJOY, U.S. Postmaster General, in his official capacity.<br><br>        Defendants. | Case No.: 21-cv-1134 (PJS/ECW) |

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Steven Linell Smith, as and for his Amended Complaint against Defendants United States Postal Service and Louis DeJoy, Postmaster General (collectively, the "Postal Service"), states and alleges as follows:

**Parties and Jurisdiction**

1. Plaintiff Steven Linell Smith ("Smith") is a Minnesota resident, residing at 1580 Lakewood Drive North, in the City of St. Paul, County of Ramsey, State of Minnesota.

2. Defendant, United States Postal Service, is an independent establishment of the Executive Branch of the Government of the United States of America.

3. Louis DeJoy is the United States Postmaster General, located at 475 L'enfant Plaza SW, in the District of Columbia, in the United States. Collectively, the Defendants shall be referred to throughout this Complaint as the "Postal Service."

1

4. The United States District Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331.

## Introduction

5. Smith is a Black, African American man who worked for the Postal Service from October 2013 until May 27, 2021, and again from October 2021 until on or about March 27, 2022. From the moment that Smith began working for the Postal Service, he was the target of unrelenting and continuous, abhorrent racial discrimination at the hands of the Postal Service. The Postal Service's treatment of Smith—and his wife—is a nightmare.

6. This action raises his claims under Title VII of the Civil Rights Act of 1964 for harassment and discriminatory hostile work environment, racial discrimination, retaliation for opposing harassment and discrimination, and retaliation for engaging in speech protected by the First Amendment of the United States Constitution. 42 U.S.C. § 2000e, *et seq*; 42 U.S.C. § 1983, *et seq*.

## Background

7. As a Black, African American man, Smith is a member of a statutorily protected class. Smith is a basketball and a Los Angeles Lakers fan (discussed below). Smith's wife, Michelle A. Smith ("Michelle") is a Black, African American woman. She commenced a lawsuit against the Postal Service on December 14, 2020 in the United States District Court for the District of Minnesota, alleging similar allegations as alleged herein. *See* Case No. 20-cv-00498 SRN-DTS.

2

8. Michelle began working for the Postal Service in 2006. Smith began working for the Postal Service in October 2013. He has been discriminated against since his first day of employment with the Postal Service.

9. The Postal Service hired Smith as a Labor Custodian in October 2013. When he was hired, he first worked at the Postal Service's Oak Park Heights location in Stillwater, Minnesota ("Oak Park Heights"). Michelle also worked at the Oak Park Heights facility. After enduring repeated harassment and discrimination at that location, Smith and his wife sought a voluntary transfer to his current location, located at 3232 Denmark Avenue, Eagan, Minnesota 55121, in December 2016 (the "Eagan facility").

**The Postal Service's Discrimination at Oak Park Heights**

10. On or about May 27, 2016 Smith approached Postmaster Terry Hjelmgren ("Hjelmgren") about being promoted to a maintenance mechanic.

11. Hjelmgren told Smith that was not going to happen because Smith was Black and the Postal Service was run by the "good old boys."

12. While working at Oak Park Heights, Hjelmgren and Tommy Klein ("Klein"), a postal clerk, referred to Smith as "Monkey Man."

13. Someone at the Postal Service taped a picture of a gorilla on the work room floor and Supervisor Char Wilson ("Wilson") said that it looked like Smith.

14. On September or about 12, 2016, Smith filed a complaint with the EEOC (Agency Case No. 4E-553-0047-16), for harassment, leave and pay, and working conditions.

3

15. On or about December 22, 2016, Michelle overheard Klein say that he could not wait until the Smiths "were gone like the Obamas" because he (Klein) was "trying to clean the place up."

16. The next day, Michelle overheard Hjelmgren say that the Smiths were lying on their EEOC claim.

17. As alleged above, Smith and his wife transferred to the Eagan facility shortly after, to escape the harassment and discrimination.

**The Postal Service's Discrimination at the Eagan Facility**

18. Smith began working as a labor custodian in Eagan, Minnesota in early January 2017, where the harassment and discrimination followed him and his wife.

19. Smith's various coworkers have repeatedly hurled racist pejoratives and slurs at him, for years. For example, a white Postal Service employee named Ann Ziemer ("Ziemer") has called Smith, among other things, a "jig-a-boo" and a "shit-skinned motherfucker." Ziemer is a friend of Klein. Another white employee, John Selbitschka ("Selbitschka"), has called Smith a "black bitch" and a "black motherfucker", among other racial epithets, became violent with, and tried to fight Smith on at least two occasions. Justin Allison ("Allison"), has also accosted Smith with similarly racially charged terms.

20. According to statements made by Smith's supervisor, Ziemer has a history of harassing Black employees of the Postal Service.

21. Beginning in January and February 2017, Ziemer began following Smith and Michelle around the Eagan facility to interfere with their ability to perform their employment duties.

22. On or about February 22, 2017, Smith and Michelle's supervisor, Larry Stevens ("Stevens), informed Michelle that he (Stevens) was having a sexual relationship with Ziemer.

23. On or about March 24, 2017, Smith, Michelle, and Ziemer met with Postal Service management, where they were all told to "stay away from one another" and to "treat each other with dignity and respect." Ziemer has refused to follow this directive.

24. Over time, his coworkers' racist acts have grown in severity and extended beyond the Postal Service property. On or about March 26, 2017, Ziemer waited for Smith in the parking lot, wrote down his license plate, and followed him home from work—from the Eagan facility to his home in Maplewood, Minnesota. On another occasion, Smith observed Ziemer driving slowly by his house on or about April 6, 2017.

25. Ziemer's conduct terrified Smith and Michelle, who moved homes to avoid being followed home by Ziemer again.

26. On or about April 5, 2017, Ziemer falsely alleged that Smith and Plaintiff keyed her car. Stevens informed Michelle that he witnessed Ziemer key her own vehicle.

27. On April 2, 2017, Michelle overheard Ziemer asking coworkers about Smith's prior EEOC complaint and discussing her relationship with Klein and Hjelmgren.

28. On or about April 29, 2017, the Postal Service completed its investigations into Ziemer—based on Smith and Michelle's complaints—but informed Smith and Michelle that no further action would be taken.

29. On October 19, 2017, Ziemer approached Smith from behind and rubbed her body and chest against his. Smith reported this to Postal Service management immediately.

30. At the Eagan Facility, each custodian has their own toolbox, which are all aligned in a row. In December 2018, Smith discovered the following note on his toolbox:

[*intentionally left blank*]



(the "Note"). After he discovered the Note, Smith brought it to the attention of supervisor Matt Nelson, complained about it, and demanded that it be addressed. On or about December 17, 2018 Smith drafted a statement regarding the Note, which he provided to:

    a. Matt Nelson (supervisor/manager);

    b. Anthony Williams (district manager);

    c. Randy Elsen (plant manager);

    d. Roy Reynolds (senior plant manager);

    e. Tracey Fransen (human resources employee);

    f. Lory Wagner (employee assistance program employee); and

    g. Tom Bishop (maintenance manager).

31. Michelle also provided a statement to Postal Service management and wrote that: "I do not feel safe at work anymore!! I have been telling management about what's been happening to my husband and I! I do not know what to do anymore!!"

32. After providing Postal Service management with his December 17, 2018 statement, Smith did not return to work for a week out of fear for his safety.

33. On or about April 15, 2018, Ziemer said that she could not stand Smith "acting Black."

34. On or about July 18, 2018, Ziemer blocked Smith's car in the parking lot, wrote down his license plate number, and called the police on him. The false police report prevented Smith from either leaving the facility or continuing to perform his duties. Postal Service management told law enforcement that there were "ongoing issues" between the parties.

35. On or about September 30, 2018, Allison called Smith "a gang member" and called the police on him. Law enforcement deferred to the Postal Service to handle the matter internally. Upon information and belief, the Postal Service has taken no action.

36. On or about December 25, 2018, Allison and Selbitschka approached Smith while he was at the vending machine. Selbitschka told Smith that the vending machine would not work for him because he "[is] Black."

37. On or about March 11, 2019, Allison tipped over Smith's toolbox containing the tools necessary to perform his job. On other occasions, Smith's other coworkers

have stolen his tools, damaged his tools, or rifled through his toolbox, which interfere with his ability to perform his job.

38. Recently, Smith's coworkers at the Postal Service have adopted more aggressive methods to attempt to ruin his career and life. For example, throughout April and May 2021:

   a. On or about April 9, 2021, Zack Sindt, a white Postal Service employee, falsified allegations that Smith gestured with a "finger gun", which the Postal Service determined was not credible.

   b. Ziemer falsely reported to the Postal Service, the union, and law enforcement that Smith had a gun in his vehicle, during the week of April 12-16, 2021.

   c. The following week, Ziemer and another coworker falsely reported to the Postal Service and the union that Smith revealed his penis to them at the facility.

   d. On or about April 24, 26, and May 4, 2021 Nicole Fenton, a white Postal Service employee, falsified numerous allegations against Smith, including that he gestured with a "finger gun" to her and that he described that his penis was larger than her husband's. Around the same time that Fenton alleged the above against Smith, she told Smith that she thought his penis would be bigger than her husband's. Although Smith reported Fenton's statements to management, they did not investigate Smith's report.

39. On numerous occasions, the Postal Service has disciplined Smith by, among other things, suspending him for allegedly violating Postal Service policies meanwhile

9

similarly situated white employees who have engaged in misconduct remain employed with the Postal Service. Smith's similarly situated white coworkers are allowed to falsify allegations against him, violate the Postal Service's policies, make false police reports, and became violent, without consequence.

40. The above-alleged racist conduct has and continues to interfere with Smith's ability to perform his duties for the Postal Service. Smith spent enormous amounts of time and energy reporting his coworkers' conduct and/or addressing their false allegations and police reports. Smith is fearful for his life and cannot escape this fear after he leaves the facility because he fears that he will be followed home again.

41. Ziemer's employment file is replete with a history of complaints regarding her harassment of Black employees of the Postal Service.

42. In one instance, Smith demanded that his manager stop violating his human rights. His manager mocked Smith and asked, "what human rights?"

43. In addition to the Note, Smith similarly complained of his coworkers' racist remarks to his supervisors at the Postal Service in various written statements. Upon information and belief, the Postal Service has done nothing to address the Note or the ongoing racist conduct. Instead, the Postal Service continues to allow white employees to continue violating the Postal Service's policies in numerous ways meanwhile disciplining Smith for less serious conduct or otherwise false allegations of misconduct.

44. To date, the Postal Service has not taken action to stop the harassment endured by Smith or his wife. The Smiths continued to work for the Postal Service, despite the

hostile work environment, because the Postal Service served as their only source of income. The environment alleged herein prevented Smith or his wife from resigning without the other, for fear of additional discrimination or retaliation.

45. Smith repeatedly reported the above-alleged conduct to the union, but, upon information and belief, the union never filed a grievance or took action to address the alleged conduct.

46. Smith has been diagnosed with insomnia, anxiety, and depression as a result of the above-alleged conduct.

**Procedural and Administrative History**

47. Smith has filed four complaints regarding the Postal Service's unlawful and discriminatory treatment of him with the United States Equal Employment Opportunity Commission ("EEOC"):

    (1) Case No. 4E-553-0047-16 (alleging that the Postal Service refused to give him the proper pay or title because he is black and the Post Office is "run by the good ol' boys");

    (2) Case No. 1E-554-0004-18 (alleging retaliation for engaging in statutorily protected activity, hostile work environment, and sexual harassment);

    (3) Case No. 1E-554-0009-19 (alleging hostile work environment and retaliation for engaging in statutorily protected activity);

    (4) Case No. 1E-554-0016-20 (alleging hostile work environment, harassment, retaliation for engaging in statutorily protected activity); and

    (5) Case No. 1F-641-0011-21 (alleging hostile work environment, harassment, discrimination based on race, color, and retaliation for engaging in statutorily protected activity).

    (6) Case No. 1F-641-0155-22 (alleging hostile work environment, harassment, discrimination based on race, color, and retaliation for engaging in statutorily protected conduct).

48. Smith has exhausted all administrative remedies, appeals, and proceedings in the above-mentioned cases. Smith has received "right-to-sue"/"right-to-file" notices in these cases.

49. Smith commenced a lawsuit in United States District Court, District of Minnesota, on or about April 30, 2021, alleging violations of Title VII of the Civil Rights Act of 1964. Smith served the Defendants with the lawsuit on May 3, 2021. The Postal Service escorted him off the premises and placed him on investigatory leave the next day. The Postal Service terminated him weeks later, on or about May 27, 2021. The First Amended Complaint followed. The Postal Service reinstated Smith in October 2021.

50. The Postal Service paid Smith a portion of his back pay from approximately May 2021 through October 2021 but withheld backpay equal to the amount he obtained from Minnesota's unemployment insurance benefits program.

51. Shortly after reinstating his employment, the Postal Service began papering his file to terminate him again for the reasons articulated in this Complaint.

52. The Postal Service terminated him again in March 2022. This Second Amended Complaint follows.

## CAUSES OF ACTION

### Count I: Harassment and Hostile Work Environment under Title VII of The Civil Rights Act of 1964 - 42 U.S.C. § 2000e, *et seq*.

53. Smith restates and realleges all paragraphs of this Complaint as if fully stated herein.

54. From the start of his employment, Smith has endured offensive conduct and harassment from his white/Caucasian coworkers on the basis of his race, color, and because he engaged in statutorily protected conduct.

55. Smith has been the subject of harassment because of his race and/or color and because of his statutorily protected activity.

56. At all relevant times, the Postal Service knew about the harassment alleged.

57. The Postal Service failed to take prompt or appropriate corrective action to address the harassment.

58. The harassment was severe and pervasive enough—subjectively and objectively—to create a work environment that a reasonable person would consider intimidating, hostile, or pervasive.

59. The discriminatory harassment altered the terms, conditions, and privileges of Smith's employment and unreasonably interfered with his work performance.

60. The Postal Service's failure to address the alleged harassment he and his wife endured has caused him to be diagnosed with anxiety, depression, and insomnia.

Smith experiences medical problems and obtained psychiatric counseling to endure the hostile work environment at the Postal Service.

61. Smith has missed work and lost wages as a result of the hostile work environment.

62. Smith was required to retain an attorney to commence litigation against the Postal Service in an attempt to finally put a stop to the hostile work environment.

63. The Postal Service's above-alleged actions have caused Smith to suffer damages, including but not limited to, loss of wages including backpay and front pay, emotional distress, and attorney fees in an amount to be determined at trial.

### Count II: Discrimination based on race/color under Title VII of The Civil Rights Act of 1964 – 42 U.S.C. § 2000e, *et seq*.

64. Smith restates and realleges all paragraphs of this Complaint as if fully stated herein.

65. The Postal Service discriminated against Smith by allowing similarly situated white employees to engage in violations of Postal Service policy in numerous ways and, at times, become violent, without being terminated.

66. Smith was meeting the Postal Service's legitimate job expectations.

67. On or about May 4, 2021, the Postal Service escorted him off of the premises and placed him on investigatory leave because of his race/color.

68. The Postal Service terminated Smith because of his race/color at least twice: on or about May 27, 2021 and after the Postal Service reinstated him in October 2021, and again on or about March 27, 2022.

69. Similarly situated employees outside the protected class were treated differently.

70. The Postal Service's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964.

71. The Postal Service's above-alleged actions have caused Smith to suffer damages, including but not limited to, loss of wages including backpay and front pay, emotional distress, and attorney fees in an amount to be determined at trial.

### Count III: Retaliation under
### Title VII of The Civil Rights Act of 1964 – 42 U.S.C. § 2000e, *et seq.*

72. Smith restates and realleges all paragraphs of this Complaint as if fully stated herein.

73. Smith engaged in protected conduct by opposing an act of discrimination made unlawful by Title VII by, among other things, commencing a lawsuit under Title VII of the Civil Rights Act of 1964 for harassment and hostile work environment based on his race/color. Smith caused this lawsuit to be served on the Postal Service on May 3, 2021.

74. The Postal Service retaliated against him by escorting him off the premises and placing him on investigatory leave the next day. The Postal Service terminated his employment shortly after, on or about May 27, 2021.

75. The Postal Service reinstated Smith in October 2021 but began papering his file shortly after his reinstatement and terminated him again, for the reasons alleged herein, on or about March 27, 2022.

76. The Postal Service retaliated against Smith for engaging in statutorily protected conduct.

77. The Postal Service's actions constitute unlawful retaliation/discrimination in violation of Title VII of the Civil Rights Act of 1964.

78. The Postal Service's above-alleged actions have caused Smith to suffer damages, including but not limited to, loss of wages including backpay and front pay, emotional distress, and attorney fees in an amount to be determined at trial.

## COUNT IV: Retaliation/Discrimination
## under Bivens/42 U.S.C. § 1983, *et seq.*

79. Smith restates and realleges all paragraphs of this Complaint as if fully stated herein.

80. The Postal Service violated Smith's right to be free from retaliation for exercising his right of free speech and association secured by the First and Fourteenth Amendments to the Constitution of the United States.

81. Smith exercised his right of free speech by, among other things, engaging in statutorily protected conduct and reporting the Postal Service's unlawful conduct on the numerous occasions alleged above.

82. The Postal Service retaliated against Smith for exercising his right of free speech by among other things, suspending him, placing him on investigatory leave, and terminating him.

83. The Postal Service's actions constitute unlawful retaliate/discrimination under 42 U.S.C. § 1983, *et seq*.

84. The Postal Service's above-alleged actions have caused Smith to suffer damages, including but not limited to, loss of wages including backpay and front pay,

emotional distress, punitive damages, and attorney fees in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Smith prays for judgment as follows:

1. Declaring that the Defendants' conduct violates Title VII of the Civil Rights Act of 1964, namely 42 U.S.C. § 2000e *et seq.*;

2. For reinstatement, or, in the alternative, front pay in an amount to be determined at trial;

3. For backpay in an amount to be determined at trial;

4. For an award of compensatory damages in an amount to be determined at trial;

5. For pre and post-judgment interest;

6. For an award of punitive damages;

7. For all expenses, costs and disbursements, and reasonable attorney fees as allowed by law, including and without limitation, attorney fees allowed by law, including but not limited to under 28 U.S.C. § 2412; and

8. All other relief the Court deems just and equitable.

Plaintiff demands a trial by jury.

**COLLINS, BUCKLEY, SAUNTRY & HAUGH, P.L.L.P.**

Dated: September 1, 2022

By: */s/ Charles R. Shafer*
Charles R. Shafer (#0401080)
Sarah J. McEllistrem (#0388053)
First National Bank Building
332 Minnesota Street

Suite W1100
St. Paul, MN 55101
Phone: 651-227-0611
Email: smcellistrem@cbsh.net
cshafer@cbsh.net

***Attorneys for the Plaintiff***