UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
No. 21-cv-1134 (PJS/ECW)

Steven Linell Smith,

    Plaintiff,

v.

United States Postal Service, et al.,

    Defendants.

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

### INTRODUCTION

Plaintiff Steven Smith's sole remaining claim before the Court is his claim that Defendants United States Postal Service and Postmaster General Louis DeJoy, in his official capacity, subjected him to a hostile work environment based on his race and/or color. But Smith has failed to present sufficient evidence to allow a reasonable jury to find for him on at least three dispositive elements of his claim. First, Smith has presented no evidence that there was harassment because of his color. Second, even assuming some racial harassment, Smith fails to show that it was severe and pervasive. Finally, the overwhelming evidence shows Defendants acted promptly and appropriately in response to Smith's complaints. These flaws are fatal to his claim. Accordingly, Defendants respectfully request that the Court grant this motion for judgment as a matter of law on Smith's one remaining claim. Fed. R. Civ. P. 50(a).

**RELEVANT BACKGROUND**

Smith alleges Defendants violated Title VII of the Civil Rights Act of 1964 because he endured offensive conduct and harassment from his coworkers based on his race and color and Defendants failed to address it. ECF No. 43 ("2d Am. Compl.") at ¶ 53–63. He alleges Defendants' failure to address the harassment has caused him emotional distress and he has incurred damages. *Id.* ¶¶ 60. Defendants have denied his allegations. *See generally* ECF No. 47 ("Answer to 2d Am. Compl.").

**ANALYSIS**

A. **Standard of Review**

Under Federal Rule of Civil Procedure 50(a), the Court may resolve an issue as a matter of law if "a party has been fully heard on an issue during a jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150–51 (2000). Such motion "may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2).

To establish a Title VII race- or color-based hostile work environment claim, a plaintiff must show that (1) he is a member of a protected group; (2) he was subjected to unwelcome race- or color-based harassment; (3) the harassment was because of the plaintiff's race or color; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the defendant knew of the alleged harassment and failed to take prompt and appropriate remedial action. *Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir.

2008); *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 892-93 (8th Cir. 2005). For harassment to affect a condition of employment the conduct must be severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Id.*

      **1.**      **No reasonable jury could return a verdict for Smith on the basis that his alleged harassment was based on color.**

To start, Smith has not put forward any evidence to support his allegation that the harassment he suffered was because of his color.

Claims alleging discrimination based on race are not the same as claims alleging discrimination based on color. *See Jackson v. Minn. Dep't of Human Servs.*, Case No. 20-cv-749 (ECT/TNL), 2021 WL 1111075, at *6 (D. Minn. March 23, 2021) (noting that while the Eighth Circuit has not addressed the question, other courts have drawn a clear distinction between "race" and "color"). While race discrimination is directed at an individual's membership in a racial group, "color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Id.* (citing, among other cases, *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 n.5 (4th Cir. 2002)).

Smith has not put forth a single piece of evidence that even suggests the harassment he alleges he suffered was because of "the particular hue of the plaintiff's skin." *See Jackson*, 2021 WL 1111075, at *6. The only evidence Smith put forward that even comes close to alleging discrimination based on the color of his skin was his counsel's speculation

3

on the eve of trial that the fact that alleged harasser Justin Allison is biracial may be relevant to discrimination on the basis of color, and Smith's speculation that he thought Allison is "mad at a lot of Black men" because Allison did not have a relationship with his Black father. Trial Tr. at 165:2–8. Even if this speculation were true,[1] this still qualifies as discrimination based on race; Smith did not speculate that Allison dislikes Black men generally or Smith specifically because of the particular hue of his skin.

Because Smith did not put forward a single fact in the record suggesting Smith suffered harassment based on his color, this claim should be dismissed as a matter of law.

### 2. No reasonable jury could return a verdict for Smith on the basis that any racial harassment he suffered was "severe and pervasive."

Defendants next move for judgment as a matter of law on Smith's hostile work environment claim because he has not established that any racial harassment he suffered was "severe and pervasive."

At summary judgment, the Court wrestled with the question of "whether harassing conduct that is not, on its face, connected to race can nevertheless be 'counted' in assessing whether a plaintiff has been subject to race-based harassment that was sufficiently severe to affect a term, condition, or privilege of employment." ECF No. 90 at 13. The Court concluded "facially race-neutral conduct can support a race-based hostile-environment claim when the race-neutral conduct is sufficiently connected to overtly racist conduct." *Id.* at 14. Given the evidence Smith adduced at trial, Smith has made no such showing that

---

[1] For the record, Allison denied the speculation that he did not have a relationship with his father when he was alive, or that he is mad at Black men because of his father. Trial Tr. at 816:16–25.

the race-neutral conduct is connected to any overtly racist conduct to which he may have been subjected.

To begin, Smith has made absolutely no showing, absent his speculation about Allison's relationship with his father, that any conduct he alleges he experienced at Allison's hands had anything to do with Smith's race. Even if the jury were to believe Smith's allegations that Allison harassed him, no reasonable jury could conclude that the harassment was based on his race. Therefore, the jury should not be "counting" incidents with Allison in determining whether any racial harassment was "severe and pervasive." *See Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1085 (8th Cir. 2011) (focusing on "congruency of person or incident").

Smith also cannot "count" all the harassment he alleges at the hands of Ann Ziemer. Although he does allege she used racial slurs against him "a few" times, Trial Tr. at 147:16-19, those isolated incidents will not lead a reasonable jury to conclude that the entire course of conduct related to his interactions with Ziemer can be "counted" in determining if he suffered "severe and pervasive" harassment at her hands because of his race. Eighth Circuit cases that seem to suggest the contrary—such as *Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003) (only some of the conduct at issue was "not obviously based" on plaintiff's race) and *Bowen v. Mo. Dep't of Social Servs.*, 311 F.3d 878, 880–84 (8th Cir. 2002) (no indication that the alleged harasser also had a habit of harassing those outside plaintiff's protected class)—are distinguishable because they do not involve such a long list of allegations that have absolutely nothing to do with race or significant evidence of alternative motives on the part of the alleged harasser. Here, for

example, Smith himself alleges that Ziemer started harassing him because "she got upset" he reported her to management about something unrelated to race. Trial Tr. at 48:21–49:25.

Setting aside any conduct that is not facially race-based, then, Smith is left with only the following incidents supporting his claim that racial harassment he was subjected to was severe and pervasive:

- Ziemer followed Smith around and made animal noises, referred to him and Michelle as "them people" or "those people," told Smith he had "shit skin," called him "jigaboo," and told him she hates it when he is "acting Black." When pressed, Smith confirmed Ziemer used these racial slurs against him "a few" times.[2] Trial Tr. at 147:16–19.

- An unidentifiable person taped a note to Smith's toolbox on December 17, 2018 that read "Caution: Dead Laker's N****r Storage Ahead."

- On December 25, 2018, Selbtischka told Smith that an ATM would not work for him because he was Black.

- Three times, during heated altercations (usually instigated by Smith), John Selbitschka called Smith a "Black bitch."

Even crediting Smith's version of events, no reasonable jury could determine this conduct Smith experienced was severe and pervasive enough to meet the high bar set by the Eighth Circuit. *See Abdel-Ghani v. Target Corp.*, 686 F. App'x 377, 378–79 (8th Cir. 2017); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1081–82 (8th Cir. 2010), *abrogated in part on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). Therefore, Smith cannot meet this essential element of his claim.

---

[2] As he did in his deposition, Smith initially testified that Ziemer would use these terms all the time then later corrected himself to say only "a few" times, likely upon the realization that his reports it happened frequently are wholly uncorroborated and directly contrary to testimony he gave during the case brought by his wife, Michelle Smith. *See* ECF No. 64–12 at 93:6–13 and 95:12–17.

> **3. No reasonable jury could return a verdict for Smith on the basis that the USPS did not act promptly and appropriately regarding Smith's complaints.**

Finally, no reasonable jury could find that Smith has met his burden to prove Defendants did not act promptly and appropriately in response to Smith's complaints. Defendants investigated virtually every complaint Smith made to management. Where they could corroborate *any* of his allegations, they issued discipline. They ordered Smith's alleged harassers to stay away from him and disciplined them when they did not follow those orders. They engaged outside assistance to conduct a thorough investigation into his allegations about Ziemer only to conclude that they could not be corroborated. They scheduled repeated meetings with all involved employees. When Smith found the offensive toolbox note, management treated it like an emergency and engaged two separate federal law enforcement agencies for assistance. Management continued to require employees to take annual anti-harassment training; and sent out required notices every year to remind employees of Defendants' policies on violence and harassment in the workplace. Notably, the burden is on Smith—not Defendants—to prove that Defendants' response was insufficient.

Frankly, it's unclear what else Defendants could have done. While his theory is hard to discern, Smith seems to allege Defendants should have taken a few different courses of action in response to his complaints. He first alleges that Defendants should have (1) disciplined other employees based only on Smith's word when his allegations could not be otherwise corroborated, (2) disciplined other employees for filing complaints about him based only on Smith's word that the other employees' allegations were "lies," or (3) simply

fired the people he thought were harassing him. All three would be in violation of the Postal Service's Collective Bargaining Agreement with the American Postal Workers' Union and are not on the table for the jury to consider. USPS is required by law to respect rights for which its employees have bargained, including a prohibition on discipline without "just cause." *See Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 935, 945 (8th Cir. 2010) (courts must consider the "options available to the employer"); *Kpou v. Supervalu, Inc.*, 556 F. Supp. 3d 940, 962 (D. Minn. 2021) (considering bargaining agreement).

Further, Title VII does not require employers to give more weight to the version of events presented by a complainant when compared to that of the alleged harasser. *See Adams v. O'Reilly Auto., Inc.*, 538 F.3d 926, 930 (8th Cir. 2008).[3] Where an employer conducts a reasonable investigation of the complaint and cannot corroborate the allegations of the complainant, it is under no obligation to fire the alleged harasser simply because the complainant wants that person out of the workplace. *See Rhodes v. Johnson*, Case No. 3:13-cv-00109, 2014 WL 2531594, at *8 (W.D.N.C. June 5, 2014) (citing *Adams*, 538 F.3d at 930).

Nor are Defendants required to engage in a kamikaze mission to impose discipline for every uncorroborated allegation, then fight to sustain the discipline through arbitration only to lose because management did not have "just cause" to discipline the employees.

---

[3] *Adams* discusses the "he said-she said" conundrum for employers in the context of the *Farragher-Ellerth* affirmative defense, which is available to employers when an employee is alleging harassment at the hands of a supervisor. That said, *Farragh*er-*Ellerth* analyzes the same question before the Court here—whether an employer took "prompt and appropriate" remedial action.

Such a course would be an irresponsible use of taxpayer dollars, ineffective because the alleged harassers would be returned to the workplace, and itself a violation of Defendants' duty to negotiate grievance resolutions in good faith. Trial Tr. at 814:12–15.

Smith next seems to suggest management should have engaged in their own CSI-style investigation into who may have left a note on Smith's toolbox, based only on Smith's lay speculation that maintenance managers can perform reliable handwriting or fingerprint analyses or can conjure up video footage that does not exist. While Smith may speculate that the Office of the Inspector General for the U.S. Postal Service or the U.S. Postal Inspection Service might have such capabilities—without providing any actual evidence such methods would even be reliable or feasible[4]—those independent law enforcement agencies do not report to management at the St. Paul P&DC or even district leadership.[5]

Finally, Smith seems to imply that management should have disciplined employees for some of the conduct he alleges he suffered at their hands while off the clock, outside of the facility. This, too, is prohibited by the Collective Bargaining Agreement with the

---

[4] Smith has not, for example, explained how such law enforcement agencies are supposed to compel reliable and sufficient handwriting or fingerprint samples from employees at the St. Paul P&DC based only on his speculation that certain individuals may have been responsible.

[5] The U.S. Postal Inspection Service reports directly to Postmaster General Louis DeJoy. *See* 39 C.F.R. Part 233 (outlining the authority of the Postal Inspection Service). The Office of the Inspector General of the U.S. Postal Service is an independent agency within the Postal Service and the Inspector General reports to the presidentially appointed governors on the Board of Governors of the United States Postal Service. *See* 39 C.F.R. § 230.1(b) (noting that the Inspector General "shall not be supervised by, nor report to" the Postmaster General and/or any designee appointed by the Postmaster General).

9

American Postal Workers' Union, which limits management's authority to direct employees to "the performance of official duties." *See* D-391 (CBA) at 5.

None of these are real options, nor is the U.S. Postal Service required to do so under the law. An employer's response need not be perfect, or even embody best practices, to be reasonably calculated to end harassing conduct. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 500 (4th Cir. 2015). Smith cannot reasonably expect Defendants to have taken any of these identified courses of action to end the harassment he alleged he suffered. Therefore, Smith cannot meet this essential element of his claim.

## CONCLUSION

For the reasons outlined above, Defendants respectfully request that the Court grant Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) and dismiss Smith's claim with prejudice.

Dated: October 6, 2024

ANDREW M. LUGER
United States Attorney

*s/ Emily M. Peterson*

By: ANDREW TWEETEN
Assistant U.S. Attorney
Attorney ID Number 0395190
EMILY M. PETERSON
Assistant U.S. Attorney
Attorney ID Number 0395218
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
andrew.tweeten@usdoj.gov
emily.peterson@usdoj.gov

Attorneys for Defendants