UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STEVEN LINELL SMITH,                               Case No. 21-CV-1134 (PJS/ECW)

          Plaintiff,

v.                                                                  ORDER

UNITED STATES POSTAL SERVICE and
LOUIS DEJOY, U.S. Postmaster General, in
his official capacity,

          Defendants.

      Charles Robert Shafer and Emeric J. Dwyer, CHESTNUT CAMBRONNE,
      PA; Sarah J. McEllistrem, COLLINS, BUCKLEY, SAUNTRY & HAUGH,
      PLLP, for plaintiff.

      Andrew Tweeten and Emily M. Peterson, UNITED STATES
      ATTORNEY'S OFFICE, for defendants.

Plaintiff Steven Smith brought this action against his now-former employers, defendants the United States Postal Service and Postmaster General Louis DeJoy (together, the "Postal Service"). Smith, who is African-American, alleged that the Postal Service had subjected him to a hostile work environment based on race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; discriminated against him on the basis of race and color in violation of Title VII; and retaliated against him for complaining about discrimination in violation of Title VII and the First and Fourteenth Amendments to the United States Constitution.  After

Smith's discrimination and retaliation claims were dismissed, Smith proceeded to trial on his hostile-environment claim. The jury returned a verdict for Smith in the amount of $75,000, which was $25,000 less than the Postal Service had offered Smith to settle.

This matter is before the Court on two motions: (1) the Postal Service's motion for judgment as a matter of law and (2) Smith's motion for an award of attorney's fees in the amount of $536,589.15 and costs in the amount of $22,484.34. For the reasons that follow, the Court denies the Postal Service's motion and grants Smith's motion in part.

## I. BACKGROUND

Smith was employed by the Postal Service from October 2013 to May 2021, and then again from October 2021 to March 2022. Am. Compl., ECF No. 43 ¶ 5. Smith worked as a custodian at a Postal Service facility in Stillwater, Minnesota before transferring in January 2017 to the Postal Service's Processing and Distribution Center (the "P&DC") in Eagan, Minnesota. *Id.* ¶¶ 9, 18. Smith alleges that he was subjected to harassment and a hostile work environment because of his race and color throughout his employment with the Postal Service. *See, e.g., id.* ¶¶ 54–58.

In April 2021, Smith initiated this action, asserting a single cause of action under Title VII for harassment and a hostile environment. ECF No. 1. After the Postal Service suspended and then terminated Smith in May 2021 for misconduct, Smith amended his complaint to add three claims: a Title VII claim alleging that the Postal Service engaged

in discrimination against Smith when it suspended and fired him, and two claims—one brought under Title VII and the other a constitutional claim brought under § 1983 (the "*Bivens*" claim)—alleging that the Postal Service unlawfully retaliated against Smith for filing this action when it suspended and fired him. *See* ECF No. 16 ¶¶ 61–80. The Postal Service reinstated Smith in October 2021, Am. Compl. ¶ 49, but then terminated Smith for the second and final time in March 2022, *id.* ¶ 52, after Smith engaged in additional misconduct. After being fired, Smith amended his complaint in this action to add factual allegations, but continued to assert the same four claims. *See generally id.*

Smith later dismissed his *Bivens* claim, ECF No. 55, and the Postal Service moved for summary judgment on Smith's three Title VII claims. ECF No. 58. In March 2024, the Court granted the motion for summary judgment in part, dismissing Smith's discrimination and retaliation claims, but declining to dismiss his hostile-environment claim. ECF No. 90. The parties proceeded to trial on that claim in October 2024. ECF No. 137. As noted, the jury returned a verdict in Smith's favor, awarding him $75,000 to compensate for his emotional distress. ECF Nos. 148, 152.

The parties engaged in settlement discussions throughout the long life of this case. McEllistrem Decl., ECF No. 164 ¶ 19; Tweeten Decl., ECF No. 172 ¶¶ 5–6. At one point, the Postal Service offered Smith $100,000 to settle. McEllistrem Decl. ¶ 19. The case did not settle, however, because Smith insisted on being reinstated—something

that was a deal breaker for the Postal Service (which had fired Smith twice because of misconduct)—and because Smith demanded considerable front pay and back pay. Smith continued to demand these remedies even after the Court dismissed his discrimination and retaliation claims, which were the only claims that could have resulted in reinstatement, front pay, and back pay. Tweeten Decl. ¶¶ 5–6.

## II. ANALYSIS

### A. Judgment as a Matter of Law

At trial, after Smith rested his case, and before the case was submitted to the jury, the Postal Service moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). The Court deferred ruling on the motion and submitted the case to the jury. Smith never responded to the motion, and the Postal Service did not renew its motion under Fed. R. Civ. P. 50(b) after the jury returned its verdict. For the reasons described below, the motion is denied.

The Postal Service initially argued that no reasonable jury could have found that Smith was harassed on the basis of *color*, as opposed to *race*, and asked the Court to submit only a racial-harassment claim (and not a color-harassment claim) to the jury. Having presided over the trial, the Court finds that a reasonable jury could have found that harassment suffered by Smith was motivated by color. And even if that were not true, a reasonable jury certainly could have found that the harassment was motivated

by race.  (The Postal Service does not argue otherwise.)  The Court instructed the jury that it must find, among other elements, that the allegedly offensive "conduct was based on [] Smith's race *or* color" in order to find that Smith was subjected to a hostile work environment.  ECF No. 151 at 5 (emphasis added).  "[R]ace" was thus an alternative ground on which the jury could have found for Smith.  (The Postal Service did not seek a unanimity instruction.)

Next, the Postal Service argues that no reasonable jury could have found that the harassment Smith suffered was "severe and pervasive."  In support of its arguments, the Postal Service cites only evidence of "facially race-based harassment."  ECF No. 143 at 6.  But in denying the Postal Service's motion for summary judgment, this Court explained that "facially race-neutral conduct can support a race-based hostile-environment claim when the race-neutral conduct is sufficiently connected to overtly racist conduct."  ECF No. 90 at 13.  Whether there was a "sufficient" connection between the "facially race-based harassment" that the Postal Service cites and the "facially race-neutral" harassment that the Postal Service ignores was for the jury to decide.  *See Hathaway v. Runyon*, 132 F.3d 1214, 1225 (8th Cir. 1997) ("There was no basis for the court to substitute its own judgment for the jury findings . . . particularly in light of the pivotal role of a jury in evaluating the hostility of a work environment[.]" (citations omitted)).

-5-

The Postal Service's third and final argument—that no reasonable jury could have found that the Postal Service did not take prompt and appropriate remedial action to attempt to end the harassment—was also a matter for the jury to decide. The Court may not "independently weigh[] [the same] evidence" and replace the jury's decision with its own. *See id.* at 1224. The jury heard the testimony of Postal Service supervisors, including testimony regarding the "options available to the employer." *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 945 (8th Cir. 2010); ECF No. 154 at 227–57. The jury also heard testimony from Smith's alleged harassers and Smith himself. A reasonable jury could have found, based on the evidence presented at trial, that the Postal Service did not take prompt and appropriate remedial action to end the harassment of Smith.

For these reasons, the Postal Service's motion for judgment as a matter of law is denied.

### B. Reasonable Attorney's Fees

#### 1. Lodestar Calculation

Turning to Smith's motion for an award of attorney's fees: In determining a reasonable fee award, the Court begins by calculating the lodestar—that is, the number of hours reasonably expended multiplied by reasonable hourly rates. *Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023). "The district court must exclude

from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks omitted) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Smith proposes a total lodestar of $536,589.15,[1] which reflects (1) 1357.26 hours (billed at $366,821.90) of attorney and paralegal work on the part of Collins, Buckley, Sauntry & Haugh, PLLP ("CBS&H") from April 6, 2021, through October 10, 2024, *see* McEllistrem Decl. ¶ 14 & Ex. 1 at 21[2], and (2) 538.33[3] hours (billed at $169,767.25) of attorney and paralegal work on the part of Chestnut Cambronne, PA ("Chestnut Cambronne") from September 13, 2023, through October 21, 2024. McEllistrem Decl., Ex. 2; Shafer Decl., ECF No. 165, Ex. 1 at 19; Supplemental Decl., ECF No. 167, Ex. 4. The Postal Service does not take issue with the hourly rates charged by either CBS&H or Chestnut Cambronne, and the Court finds that those rates are reasonable. *See Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) ("When determining reasonable

---

[1]Smith's initial submission calculated the lodestar at $530,289.15. ECF No. 159; McEllistrem Decl., Ex. 2. Smith later filed a supplemental declaration adding 19.3 hours (billed at $6,300) to his requested lodestar for the work done by Chestnut Cambronne to prepare the motion for an award of attorney's fees and costs. Supplemental Decl., ECF No. 167, Ex. 4.

[2]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the page.

[3]This is the sum of the total hours billed by Chestnut Cambronne, PA (519.03 hours billed at $163,467.25) as of October 8, 2024, *see* Shafer Decl., ECF No. 165, Ex. 1 at 19, and the hours billed (19.30 hours billed at $6,300) from October 9, 2024, to October 21, 2024, *see* Supplemental Decl., ECF No. 167, Ex. 4.

hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." (internal quotation marks omitted)).

The Postal Service does argue, however, that the lodestar should be lowered to $468,185.28[4] because not all of the hours billed to this matter were reasonable and necessary. Specifically, the Postal Service submits that approximately 93.17 hours should be deducted from Smith's 1,895.59-hour total to account for time associated with redundant paralegal billing, Smith's lead counsel's change of law firms, motions in limine that were filed but then withdrawn, the *Bivens* claim that was voluntarily dismissed, and discovery concerning Smith's time at the Postal Service's Stillwater facility. ECF No. 171 at 3–10. The Court largely agrees with the Postal Service.

As an initial matter, when requesting a fee award, "[c]ounsel for the prevailing party should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Smith documents no such effort here. Smith vaguely refers to "numerous hours that could have been billed" to this case, Shafer Decl. ¶ 28, but cites only the example of "conferr[als]" among Smith's counsel "at various stages of the litigation." But Smith does not say whose hours those might have been, identify on which tasks that time was spent, or report

---

[4]In its brief, ECF No. 171 at 10, the Postal Service subtracts the fees it argues should be excluded ($68,403.87) from the lodestar that was proposed by Smith in his initial filings. As noted in footnote 1, Smith later added $6,300 to that lodestar to account for the 19.3 hours spent preparing his motion for fees and costs.

how many such hours are not reflected in the records submitted. In any event, even assuming that this effort was made, Smith's proposed lodestar still includes several categories of fees that should have been excluded.

First, the trial in this case concerned a single straightforward claim, and the trial was not so complex or fast-moving as to require the support of two veteran paralegals. The Court agrees with the Postal Service that excluding from the lodestar the trial work billed by the less expensive of the two paralegals is proper. The Court therefore reduces Smith's proposed lodestar by $9,847.50 (50.5 hours billed by Mr. Englemann at $195 per hour). *See* Shafer Decl., Ex. 1 at 13.

Second, the Court agrees with the Postal Service that the hours billed by Chestnut Cambronne partner Emeric Dwyer for time spent familiarizing himself with the case—e.g., "[r]eview[ing the] file, pleadings, and court docket" and "[r]eview[ing] deposition testimony," *id.* at 13–14—are duplicate fees solely attributable to Smith's lead counsel's change in law firms, and are therefore not properly included in the lodestar. The Court accordingly subtracts $2,360 (5.9 hours billed at $400 per hour) from Smith's proposed lodestar. *Id.*

Third, it is also necessary to exclude some of the time that Smith's attorneys devoted to preparing motions in limine. Smith withdrew two of his three motions in limine at the start of the pretrial conference, after both parties had briefed all three

motions. *See* ECF No. 169 at 5. Evidently, the Postal Service's responsive briefing persuaded Smith that those two motions were meritless (which they were). *See id.* It is neither fair nor reasonable to make the Postal Service foot the bill for the work done on these clearly meritless motions. Because it is not possible to distinguish between the time spent preparing the motion in limine that Smith pursued and the time spent preparing the motions that he withdrew, the Court excludes 50 percent of the time billed in connection with Smith's motions in limine and accordingly subtracts from Smith's proposed lodestar the amount of $9,655.00 (40.5 hours billed by Mr. Shafer at $350 per hour, 0.8 hours billed by Mr. Jenssen at $225 per hour, 0.7 hours billed by Mr. Dwyer at $400 per hour, and 11 hours billed by Ms. McEllistrem at $425 per hour, for a total of 53 hours billed at $19,310.00, multiplied by (0.5)). *See* Shafer Decl., Ex. 1 at 11, 12, 18–19, 21; McEllistrem Decl., Ex 1 at 21.

Fourth, in a joint stipulation filed by the parties in July 2023, Smith agreed to dismiss the *Bivens* claim in the second amended complaint "in its entirety without an award of costs or attorney fees to any party with respect to this claim." ECF No. 55. Again, Smith has not documented any effort to exclude fees incurred with respect to the *Bivens* claim from his proposed lodestar, and it is difficult to discern from the billing records exactly how much time was spent on this claim. Based on time entries recorded in the days leading up to the submission of the joint stipulation—entries that appear to

indicate work done on the *Bivens* claim—the Court reduces Smith's proposed lodestar by $2,277.90 (3.27 hours billed by Mr. Shafer at $295 per hour, 3.1 hours billed by Ms. Teske at $195 per hour, 1.5 hours billed by Ms. McEllistrem at $375, and 0.75 hours billed by Ms. McLain at $195 per hour, for a total of 8.62 hours billed at $2,277.90). McEllistrem Decl., Ex. 1 at 20.

Finally, the Court agrees with the Postal Service that the Court should reduce the lodestar to account for time devoted to Smith's claim that he experienced a hostile environment during his employment at the Stillwater facility. That claim was clearly barred by the statute of limitations.[5] The Postal Service brought the untimeliness of the claim to the attention of Smith's counsel early in the litigation, Tweeten Decl. ¶ 2, but Smith's counsel continued to pursue the claim until the hearing on the Postal Service's motion for summary judgment. ECF No. 90 at 11 n.4. Given that Smith's billing records do not indicate which time entries related to work on the Stillwater claim—and given that Smith, again, has documented no effort to exclude from his lodestar the time that was expended on the Stillwater claim—the Court believes that a 15-percent reduction to the CBS&H bill through the summary-judgment hearing (which was held on

---

[5]*See* ECF No. 61-7 at 5–6 (dated November 30, 2018, relaying the appellate decision affirming the Equal Employment Opportunity Commission's decision finding Smith had failed to prove the discrimination he alleged had occurred during his employment at the Stillwater facility, and clearly notifying Smith that any civil action based on those allegations needed to be filed within 90 days).

September 1, 2023) fairly approximates the time devoted to this claim. Accordingly, the Court subtracts $43,735.97[6] from Smith's proposed lodestar.

Applying these reductions, the Court calculates the lodestar as $468,712.78.

### 2. Further Adjustments to the Lodestar

That is not the end of the matter. "After a district court determines the lodestar amount, it may then consider other factors to adjust the fee upward or downward, including the important factor of the results obtained." *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (cleaned up). "If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win . . . . If the plaintiff's success is limited, he is entitled only to a[] . . . fee[] that is reasonable in relation to the results obtained." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (cleaned up). "There is no precise rule or formula for making these determinations," and "[t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. The Court may consider the rejection of a substantial settlement offer in determining the reasonableness of a fee award. *See Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012–13 (8th Cir. 2004).

---

[6]The Court reaches this figure by subtracting the CBS&H billing entries for time billed after the summary-judgment hearing ($75,248.75) from the CBS&H total ($366,821.90) and multiplying that difference by (0.15). *See* McEllistrem Decl., Ex. 1 at 20–21 & Ex. 2.

As noted above, the second amended complaint contained four causes of action: (1) a *Bivens* retaliation claim, which Smith voluntarily dismissed before the Postal Service filed its motion for summary judgment, ECF No. 55; (2) a discrimination claim and (3) a retaliation claim, both brought under Title VII, and both dismissed on motion for summary judgment, ECF No. 90; and (4) the Title VII hostile-environment claim that eventually proceeded to trial.

Smith's success at that trial fell far short of "excellent."

To begin with, the jury awarded Smith $75,000, which represents only one quarter of the $300,000 statutory maximum for his hostile-environment claim. The jury was not told of the statutory cap, and thus the jury had no reason to believe that there was any limit to the damages it could award. Yet the jury chose to award Smith only $75,000.

Moreover, that $75,000 award was less than 8 percent of the roughly $1 million in damages (exclusive of attorney's fees and costs) that Smith told the Postal Service he was seeking *after* the Court issued its summary-judgment order—an order that left just one claim that, if successful, would entitle Smith only to damages for emotional distress. *See* Tweeten Decl., Ex. 1 at 3–4 (summarizing Smith's damages at $1,231,933.00, a figure which included $269,000 in attorney's fees and costs, as of April 10, 2024). Without question, then, the $75,000 jury award represented "very limited" success. *See Gumbhir*

*v. Curators of the Univ. of Mo.*, 157 F.3d 1141, 1146 (8th Cir. 1998) (finding plaintiff "achieved very limited success in the litigation" where only one third of his claims survived summary judgment and he received approximately 40 percent of the damages he sought).

Smith's repeated attempts to compare his case to *Miller v. Bd. of Regents of Univ. of Minnesota*, 402 F. Supp. 3d 568 (D. Minn. 2019), only serve to underscore the comparatively low level of success that Smith achieved. In *Miller*, the jury not only found for the plaintiff on her "core" claim—that her employer's decision not to renew her contract was unlawfully discriminatory and retaliatory—but also awarded her nearly $4 million in damages, which this Court said "likely exceeded her wildest expectations." *Id.* at 596. Here, by contrast, the jury awarded Smith only a small fraction of his "expectations" after the Court dismissed his "core" claims (that is, the claims that could have given rise to the reinstatement, back pay, and front pay on which he so adamantly insisted).

Additional considerations militate in favor of a downward adjustment to the lodestar so that the amount of the fee award reflects "the results obtained." *Wal-Mart*, 223 F.3d at 773. For one thing, Smith's stated goals (reinstatement, back pay, and front pay, *see* Tweeten Decl. ¶¶ 5–6 & Ex. 1 at 3–4) were not available to him following the Court's ruling on the Postal Service's motion for summary judgment. *See* Tweeten Decl.

-14-

¶¶ 5–6; *see also* ECF No. 169 at 18.  It appears that Smith's refusal to accept that he was not entitled to the remedies associated with his dismissed claims propelled this case to trial.  Tweeten Decl. ¶¶ 5–6.  Smith rejected multiple settlement offers, *id.*—including at least one offer of $100,000, which was 33 percent more than the jury eventually awarded him.  McEllistrem Decl. ¶ 19; *see Parke*, 368 F.3d at 1012–13 (citing *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (stating that "an offer is substantial if . . . [it] appears to be roughly equal to or more than the total damages recovered by the prevailing party," in which case "a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees incurred after the date of the settlement offer.")).[7]

Meanwhile, as Smith continued to deny the reality of his situation, his attorney's fees continued to climb.  Smith estimated that, at the time that the Court issued its summary-judgment order, he had accumulated roughly $269,000 in attorney's fees.  Tweeten Decl., Ex. 1 at 3–4.  By the time trial ended about six months later, that number

---

[7]Smith's counsel reports that the $100,000 offer was "inclusive of attorneys's fees." McEllistrem Decl. ¶ 19. Neither party specifies what amount of the $100,000 might have been apportioned to fees. Presumably, the Postal Service was content to leave it to Smith and his attorneys to decide how to allot the $100,000 between damages and fees. But even if the $100,000 were to be split fifty-fifty between Smith and his attorneys, Smith ended up incurring more than $250,000 in additional fees to recover an additional $25,000 in damages—a ratio of $10 in additional fees for every $1 in additional damages. Such a large fee award for such a small difference in damages would clearly not reflect "an amount of fees that is reasonable in relation to the results obtained." *Wal-Mart Stores, Inc.*, 223 F.3d at 773.

had nearly doubled.  Smith's counsel billed this extra quarter-million dollars in fees even though they knew that Smith's *best case scenario* was recovery of $300,000 (because of the statutory cap).  A reduction to the lodestar is warranted to account for the fact that Smith rejected reasonable settlement offers from the Postal Service—and then nearly doubled his attorney's fees—all because he stubbornly insisted on remedies to which he was not entitled.

Another concern:  Smith's discrimination and retaliation claims related to the decisions to suspend and terminate Smith for his misconduct, while Smith's hostile-environment claim related to his experiences while at work.  Discovery on the two sets of claims would have overlapped to some extent, of course, but the two sets of claims centered on two temporally distinct sets of wrongs perpetrated by two different sets of actors:  (1) decisions made by Smith's supervisors in May 2021 and March 2022 (as to the discrimination and retaliation claims), and (2) acts committed and comments made by Smith's coworkers beginning in January 2017 (as to the hostile-environment claim).  *See Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (stating that "[c]laims are related, and hence deserving of compensation, if they involve a common core of facts or are based on related legal theories" (internal quotation marks omitted)).

Smith's claims for discrimination and retaliation were not pleaded as alternative bases for the remedies he sought via his hostile-environment claim.  *Cf. Hensley*, 461

U.S. at 435 (explaining that a plaintiff who obtains "excellent results" may recover fees incurred in raising "alternative legal grounds for a desired outcome" even if the court rejects them). To the contrary, Smith's discrimination and retaliation claims were *themselves* alternative theories under which he might have recovered a category of damages that were *not* available to him through his hostile-environment claim—namely, the reinstatement, back pay, and front pay that Smith demanded throughout settlement discussions. Because Smith's overall success was very limited, and because it is not possible to distinguish the time that his attorneys spent on the (unsuccessful) discrimination and retaliation claims from the time spent on the (mildly successful) hostile-environment claim, a downward adjustment to the lodestar is warranted.

For these reasons, the Court awards Smith $304,663.31 in attorney's fees, which reflects a 35-percent overall reduction to the $468,712.78 lodestar.

### C. Costs

Smith seeks an award of costs totaling $22,484.34. ECF No. 159; McEllistrem Decl., Ex. 2. The Postal Service does not dispute that Smith is entitled to such a recovery, and the Court independently finds that Smith's claimed costs are reasonable.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) [ECF No. 141] is DENIED.

2. Plaintiff's motion for attorney's fees pursuant to Fed. R. Civ. P. 54(d), Local Rule 54.3, and 42 U.S.C. § 2000e–5(k) [ECF No. 159] is GRANTED in the amount of $304,663.31.

3. Plaintiff's motion for costs pursuant to Fed. R. Civ. P. 54(d), Local Rule 54.3, and 42 U.S.C. § 2000e–5(k) [ECF No. 159] is GRANTED in the amount of $22,484.34.

Dated:  July 8, 2025

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court